THE OAK HARBOR GAS CO. v. CATHERINE MURPHY.

CONSTRUCTION OF AN OIL AND GAS LEASE.

A lease of land for the production of oil and gas, providing that the lessee might exercise certain rights and privileges thereon for three years, or as long as oil or gas should be developed therefrom in paying quantities, and stipulating that as compensation therefor the lessee should deliver to the lessor a certain share of the oil produced, and that "should gas be found and developed upon said premises producing 100 pounds pressure to the square inch in thirty seconds, said first party (lessor) is to have the right to consume for lighting and heating his dwelling such amount as may be necessary therefor, the said company (lessee) to furnish such an amount of one-inch pipe not exceeding 500 feet as may be necessary to conduct the gas from the well to the dwelling, and the additional sum of $100 per annum for each gas well exceeding 200 pounds pressure to the square inch in thirty seconds, when and as soon as the same is marketed and utilized," and providing for no other compensation for the exercise of such rights and privileges by the lessor: *Held,* that the lessee having been permitted to exercise such rights and privileges for the said term of three years, and for three additional years thereafter, and having drilled but one well, which produced gas only, but not in sufficient quantities to at any time create a pressure of 200 pounds to the square inch in thirty seconds, and having furnished the pipe as required by the lease to convey gas to the lessee's residence, and permitted the use of such gas for the lighting and heating of such residence, is not bound to pay any rental, compensation, or damages for such occupation or use of said premises for any of said time, either before or after the expiration of said three years' term.

PARKER, J.   (Orally.)

This case is here in error.   The action below was brought upon a gas and oil lease.   The amended petition sets forth that this lease was given on the 12th day of August, 1897, by the plaintiff, Cathe·ne Murphy and her husband, John Murphy, but that John Murphy in fact had no interest in said premises.   That it gave to W. H. Murphy, his successors and assigns, the privilege of drill.ng for gas and oil and other valuable substances upon the premises descr.bed in the pleading, and that it provided that Murphy, the lessor, was to pay $100 per annum for each and every well producing gas exceed ng 200 pounds pres·ure to the square inch in thirty seconds when and as soon as the same should be marketed and utilized.   And the pleading recites certain other provisions of the lease with reference to the royalty to be pa'd for oil, and proceeds to state that the lease was to extend for the period of three years, or as long thereafter as oil or gas should be found on the premises in paying quantities; that on the 28th day of April, 1891, the lessee sold, assigned and transferred all his right, title and interest in and to the lease to the defendant, The Oak Harbor Gas Co.; that W. H. Murphy in pursuance of said lease took possession of said premises and drilled thereon, within the time provided by the lease, one well, and that only gas was found in said well in paying quantities, and that the gas therein would test to exceed a pressure of two hundred pounds to the square inch; that said defendant for the six years last past has piped off and is now piping off, from said premises, the gas so found in said well and has for said six years last past, sold and marketed the same and has neglected and refused to pay plaintiff said sum of $100.00 per annum, or any other sum or amount, altthough often requested so to do, as by the terms of said lease it was bound, to plaintiff's damage $600.00.   Then there is a further allegation that the lessee failed to drill other wells on said premises, whereby the lessor has sustained damage in the sum of $1,000.00.   This last claim appears to be eliminated from the case.

A general denial is filed by the Gas Company, excepting that it admits that it is a corporation.

The lease sued upon contains these provisions, among others:

"If oil be found and developed upon said premises in paying quantities, the said first party is to receive as his royalty the one-eighth part thereof at the well and the said Company agrees to pay said party of the first part the market value of said one-eighth (1-8) part of the oil in tank at the well, and should gas be found and developed upon said premises producing 100 pounds pressure to the square inch in thirty seconds said first party is to have the right to use and consume for lighting and heating his dwelling such amount as may be necessary therefor; the said Company to furnish such an amount of one inch pipe not exceeding 500 feet as may be necessary to conduct the gas from the well to the dwelling, and the additional sum of $100.00 per annum for each gas well exceeding 200 pounds pressure to the square inch in thirty seconds, when as soon as the same is marketed and utilized."

These are all the provisions with reference to compensation to be paid by lessee to lessor for the gas or oil that may be developed and taken away from these premises.   The lease contains this further provision:

"It is hereby agreed by and between the parties, their successors and assigns that the foregoing rights and privileges herein granted and conferred shall continue and be in force for three years from the date thereof, or so long as oil or gas or other valuable substances be found and developed upon said premises in paying quantities."

The petition alleges that the rental of $100.00 per annum is due for six years—the six years next preceding the filing of the petition. The petition was filed upon the 31st day of January, 1894. The amended petition was filed later, so the six years for which the plaintiff asks rental, includes part or most of the certain term of three years provided for in the lease—the lease providing in effect that it should extend over a period of three years and as much longer as gas should be found in paying quantities.

Now upon the trial of the case there was testimony tending to show that a well had been drilled upon these premises by Murphy before he made an assignment of the lease to the defendant Gas Company, and that this well had been utilized by him and afterward by the Company by piping the gas to the village of Oak Harbor and marketing it there. Also that the lessee had furnished the pipe as required by this lease, and had piped the gas to the residence of the lessor, and had furnished gas to her in all respects as required by the lease.

The plaintiff undertook to show that the well produced such a quantity of gas as would require the lessee to pay the one hundred dollars per annum additional rent, viz.: a pressure of 200 pounds per square inch in thirty seconds. There was some testimony on behalf of plaintiff tending to show that Murphy had admitted upon certain occasions that it was a well of that character and produced gas of that pressure. On the other hand, the testimony on the part of the defendant tends to show that the heaviest pressure ever produced in this well was 85 pounds.

It has been observed that the lease provides, that if gas be found and developed producing 100 pounds pressure, the lessee is to furnish one-inch pipe not exceeding 500 feet to conduct the gas to the dwelling house of lessor, and furnish gas to lessor, and no other compensation for such well, or the gas therefrom is provided for in the lease. If, however, the pressure of a well shall amount to 200 pounds to the square inch in thirty seconds then the additional compensation of $100.00 per year shall be paid for such well.

Now upon that state of facts, counsel for the defendant requested the court to charge the jury as follows:

"If you find from the evidence that the plaintiff and one Wm. Murphy entered into the lease and contract, as alleged in the petition, and if you further find that said lease was thereafter assigned by said Wm. H. Murphy to the defendant Gas Company, and that before said lease was assigned, said Murphy had bored on said premises a gas well, and that after the assignment of said lease to said defendant Gas Company, said defendant company took possession of said premises and used said gas well, and the gas coming therefrom; and if you further find that under said lease and contract said W. H. Murphy furnished to plaintiff gas from said well to use and consume for lighting and heating her dwelling to such extent as may have been necessary for that pur-

pose, and also furnished the pipe necessary to conduct said gas from said well to said dwelling, or has at all times been ready and willing to so furnish gas and the pipe necessary to conduct the same; and if you find that since the assignment of said contract by said W. H. Murphy to said defendant Gas Company, said defendant Gas Company has, under said lease and contract, furnished to plaintiff gas from said well to use and consume for lighting and heating her dwelling to such extent as may have been necessary for that purpose. and has also furnished the pipe necessary to conduct said gas from said well to said dwelling, or has at all times since the assignment of said lease, to-wit: been ready and willing to so furnish gas from said well, and the pipe necessary to conduct the same; and if you further find that the gas found and developed by said well did not at the time said well was completed produce a pressure exceeding 100 pounds per square inch in thirty seconds, and has not at any time since said well was completed up to the time of the commencement of this suit, produced to exceed one hundred pounds pressure per square inch in thirty seconds, then I say to you the defendant has not failed to perform said contract, and that the plaintiff is not entitled to recover damages from said defendant, and that your verdict must be for the defendant."

The court refused to give this charge, to which the defendant then and there excepted.

It seems to us that proposed charge states the law of the case very fairly, and that it should have been given. It seems to be in accordance with the plain provisions of the contract. The court in the course of his charge to the jury stated this, and exceptions are taken to it:

"If you find that this was a valid agreement; under a construction of it the court instructs as a matter of law; that the first party, who was John Murphy and wife, in consideration of the agreements entered into, granted to said W. H. Murphy, his successors and assigns, a right to enter upon the premises therein described for the purpose, and with the exclusive right of drilling and operating for petroleum, oil and gas, with the right to transfer, sublet and subdivide said land. Murphy was to locate his well on one acre of land on the bayou for the purpose and with the exclusive right in and upon said premises to drill and develop oil, gas, etc. Then it contains certain agreements as to oil which is not involved in this case. And if gas is found and developed upon said premises producing 100 pounds pressure to the square inch in thirty seconds, said first party is to have the right to use and consume for heating and lighting her dwelling such amount as might be necessary therefor. This I say is eliminated from the case. There is no evidence in regard to that being considered as a question of damages."

(I presume the court meant that the part eliminated from the case was that part about the gas being furnished to the residence. The proof appears to be clear that that was done as required by the contract.)

"It was further agreed that the lessee should pay the additional sum of $100.00 per annum for each gas well of 200 pounds pressure to the square inch in thirty seconds as soon as the same is marketed and utilized."

"And it is agreed that the rights thereunder granted should be in force three years from date or as long as gas be found and developed upon said premises in paying quantities."

"And it is upon this clause that you are now to determine the rights in this case and I say to you as a matter of law that this provision was put in for the benefit of the lessee, Mr. Murphy and his assigns. That if upon the termination of the three years, if he had not found a well in paying quantities, he might then forfeit his lease, and I say to you as a matter of law that if Mr. Murphy, his assigns or successors, continued to operate or retain the right to operate for gas upon said premises after three years, then he or his successors are liable for the time in which they operated, or restrained the right to operate said lease, and that the measure of damage is the stipulated amount which is set forth in this agreement, so that the only question for you to determine in this case is as to the use and operation, and the retention of the right to operate upon the part of the Company,—it being conceded that the assignment was made and if any one is liable, it is the defendant company."

We can find nothing which to our minds justifies this construction of the contract. There does not seem to be any provisions in the contract that the mere act of holding on to the lease while operating the premises shall make the lessee liable for rental. The only circumstances under which he is required to pay this rental are upon the marketing and utilizing of gas from a well producing a pressure exceeding two hundred pounds to the square inch in thirty seconds.

Upon the trial of the case the defendant undertook to make more clear the facts as to the volume of gas or pressure of gas from this well, and asked the following questions:

"Q. When did you make your last measurement of the pressure of this well? When did you make a test for the Gas Company the last time? A. About a year and a half ago, or two years. Q. What pressure did you ascertain to be in this well at that time in thirty seconds?"

This was objected to by plaintiff, and thereupon counsel for defendant stated that he expected to prove by said witness, and that the witness would answer to said question, that he did make a test of this well at that time and ascertained what the rock pressure was in thirty seconds, and that the rock pressure at that time in thirty seconds was about four pounds per square inch.

The following also appears in the course of the examination of this witness by defendant's counsel:

"Q. Before that time, Mr. Murphy, when was the last previous test that you made to ascertain the pressure of this well for the Gas Company? A. About two and one-half or three years ago."

"Q. I will ask you at the time you made that test what you found the pressure of that well to be in thirty seconds?" This was-objected to and objection sustained, and counsel offered to prove that the pressure at that time was ten pounds. The same question was asked as to an earlier date, and the same objection was made and sustained, and counsel offered to prove that the pressure at that time was forty pounds. A question was asked as to the pressure of the well at the time it was completed, and that was objected to and objection sustained and counsel for the defendant stated that he expected to prove that the pressure was eighty-seven pounds to the square inch; though it appears earlier in the record that the answer had been made without objection, so it was befo˭ the jury.

According to our view of this contract, the court should have permitted the witness to answer these questions, and we hold therefore, that the court erred in refusing to charge as requested in third request, and in his ruling with reference to the answering of these questions, and for these errors the judgment will be reversed.

*E. G. Love*, for The Oak Harbor Gas Company.

*Hunt & O'Farrell*, for Catherine Murphy.

---

## ATTACHMENT—BREACH OF PROMISE.